

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
03/08/2011

| | | |
|---|---|---|
| IN RE: § | | |
| MARTIN ALMAZAN; aka LEAL; aka § | Case No. 10-70253 | |
| ALMAZAN, § | | |
|    Debtor(s). § | | |
| § | Chapter 7 | |
| § | | |
| MARTIN ALMAZAN; dba LOS § | | |
| PAPOLOTES NO. 1, § | | |
|    Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 10-07017 | |
| § | | |
| TEXAS NATIONAL BANK, *et al*, § | | |
|    Defendant(s). § | Judge Isgur | |

## MEMORANDUM OPINION

Defendant Texas National Bank ("TNB") has moved to dismiss the Plaintiff's only remaining claim—for avoidance of fraudulent transfer—for failure to state a claim. The Court grants TNB's motion.

### Background

Martin Almazan, Plaintiff, sued TNB, Jose Quiroga, and Hector Guerra in the Hidalgo County District Court on March 1, 2010, seeking a temporary restraining order and asserting causes of action for fraudulent inducement and misrepresentation, breach of contract, breach of fiduciary duty, unjust enrichment, Texas Deceptive Trade Practices Act violations, duress, tortious interference with business opportunity, slander of title and libel, wrongful foreclosure, and declaratory judgment. Almazan's complaint alleged that TNB had forged Almazan's signature on promissory notes and a deed of trust, "changing the terms of the contract and the deed of trust and further changed securities for said deed of trust to allow Texas National Bank

to obtain a Second illegal and invalid lien on all of the other properties owned by Martin Almazan." ECF No. 1-1, at 7.

Almazan filed for bankruptcy on April 3, 2010, and he removed this case to the Bankruptcy Court on May 19, 2010. He filed an amended complaint on June 11, 2010, adding claims for avoidance of fraudulent transfer. ECF No. 4.

Almazan amended the complaint again on January 13, 2011. The amended complaint expands on Almazan's factual allegations. Almazan does not speak English, and he alleges that TNB misrepresented the terms of promissory notes. Almazan says that he renewed the promissory notes to TNB in reliance on TNB's representations that the notes were "simply a renewal and that no extra liens would arise upon any other property[.]" ECF No. 45, at 3.

The fraudulent transfer section of the amended complaint is as follows:

### VI.
### AVOIDANCE OF FRAUDULENT TRANSFER

> Pursuant to 11 USC 544, 548 and 550, Debtor asserts the powers of a trustee in avoiding the transfer in interest in the various properties. Defendants through their fraudulent statements and reliance upon Plaintiffs inability to speak English obtained lien interests upon properties in which they had no right and now jeopardizes the ability of the Plaintiff to successful emerge from bankruptcy and adversely affect other creditors.

ECF No. 45, at 5.

Quiroga and Guerra filed a motion to compel arbitration on July 15, 2010. ECF No. 7. The Court compelled arbitration with respect to most claims ("Arbitration Claims"). ECF No. 22. The Court retained Almazan's claims for avoidance of fraudulent transfer. Quiroga and Guerra moved to enforce the Court's order compelling arbitration on October 18, 2010. ECF No. 31. At a hearing on October 25, 2010, the Court gave Almazan sixty days to commence arbitration. If he did not, the Arbitration Claims would be dismissed.

On January 4, 2011, more than sixty days later, Quiroga and Guerra moved to dismiss the adversary proceeding. ECF No. 44. They filed an affidavit stating that Almazan had not commenced arbitration. ECF No. 44-1. Almazan did not file a response. The Court dismissed the Arbitration Claims on January 26, 2011. ECF No. 49. The sixty-day deadline applied only to the Arbitration Claims, so the Court retained the fraudulent transfer claims and did not dismiss the adversary proceeding.

On January 25, 2011, TNB moved to dismiss the remaining fraudulent transfer claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF No. 46. TNB stated that "Plaintiff has not identified or alleged a fraudulent transfer, [much] less any factual basis for avoidance of such a transfer, if any." ECF No. 46, at 1. Almazan did not file a response to TNB's 12(b)(6) motion.

## Analysis

Almazan asserts fraudulent transfer claims under § 548 of the Bankruptcy Code and under § 544, which allows the debtor to bring a fraudulent transfer claim under state law. Almazan's complaint does not state a claim under either § 548 or the Texas Uniform Fraudulent Transfer Act (TUFTA), Tex. Bus. & Com. Code §§ 24.005-24.006.

Both the Bankruptcy Code and TUFTA allow the avoidance of transfers that are either actually or constructively fraudulent. To state a claim for actual fraudulent transfer, a plaintiff must meet the enhanced pleading requirements of Fed. R. Civ. P. 9(b). *E. Poultry Distrib., Inc. v. Yarto Puez*, 2001 WL 34664163, at *2 (N.D. Tex. Dec. 3, 2001) ("If the fraudulent transfer statute Plaintiffs want the Court to apply requires intent to defraud, the enhanced pleading requirements of Rule 9(b) apply; if the statute allows for fraudulent transfer without intent to defraud, however, only the general pleading rules of Rule 8(a) must be satisfied."). Under Rule

9(b), fraud claims must be stated with particularity.

Constructive fraudulent transfer claims are governed by Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct."  556 U.S. ----, 129 S.Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

Almazan does not state a claim for actual fraudulent transfer under either the Bankruptcy Code or TUFTA.  Section 548 of the Bankruptcy Code allows the avoidance of transfers made within two years before filing bankruptcy, "if the debtor voluntarily or involuntarily— (A) made such transfer . . . with actual intent to hinder, delay, or defraud any [creditor.]"  11 U.S.C. § 548(a)(1)(A).  TUFTA states that a transfer is fraudulent "if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor[.]"  Tex. Bus. & Com. Code § 24.005(a)(1).  Under either statute, the requisite intent is the debtor's, not the transferee's.  Almazan does not allege that he executed the notes and deeds of trust with fraudulent intent.  On the contrary, he alleges that TNB and its employees fraudulently induced his signature.  Because the complaint does not allege Almazan's intent, it does not state a claim for actual fraudulent transfer.

Almazan also fails to state a claim for constructive fraudulent transfer under the Bankruptcy Code or TUFTA.  A transfer is constructively fraudulent under § 548 of the Code when the debtor:

> (B)(i) received less than reasonably equivalent value in exchange
> for such transfer or obligation; and

> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).  Almazan's factual allegations may permit the Court to infer that he did not receive reasonably equivalent value in exchange for the alleged lien interests.  However, Almazan does not plead that any of the conditions listed in § 548(a)(1)(B)(ii) existed at the time of the alleged transfer.  He does not plead insolvency, unreasonably small capital, intention or belief that he would incur debts that would be beyond his ability to pay, or that TNB was an insider.  The pleaded facts do not plausibly give rise to a constructive fraudulent transfer claim under § 548 of the Bankruptcy Code.

TUFTA has similar requirements for a constructive fraudulent transfer claim.  A transfer is constructively fraudulent under § 24.005 of TUFTA if the debtor made the transfer:

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Com. Code § 24.005.  A transfer is constructively fraudulent under § 24.006 of TUFTA only if:

> the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation" or "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Tex. Bus. & Com. Code § 24.006. Again, Almazan does not plead any facts regarding his financial condition at the time of the alleged transfer. Therefore, he fails to state a plausible claim for constructive fraudulent transfer under TUFTA.

Because Almazan does not plead actual intent and fails to plead any facts regarding his financial condition, he fails to state a claim for fraudulent transfer under the Bankruptcy Code or TUFTA. The Court dismisses the claims for constructive fraudulent transfer under 11 U.S.C. §§ 548 and 550 and Tex. Bus. & Com. Code §§ 24.005-24.006.

Typically, a plaintiff is given an opportunity to amend to meet Rule 9(b)'s heightened pleading requirements. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("Although a court may dismiss the claim [for failure to meet Rule 9(b)'s pleading requirements], it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.").

Here, however, the failure to plead Almazan's actual intent is incurable. Almazan directly states that "Defendants through their fraudulent statements and reliance upon Plaintiff's inability to speak English obtained lien interests[.]" ECF No. 45, at 5. Almazan's failure to state an actual fraudulent transfer claim is not due to a failure to meet the heightened pleading requirements. Instead, if all pleaded facts are true, he incurably fails to demonstrate any

plausible claim for fraudulent transfer. Moreover, Almazan failed even to respond to TNB's motion to dismiss. The Court therefore dismisses the actual fraudulent transfer claims.

### Conclusion

The Court dismisses Almazan's fraudulent transfer claims for failure to state a claim. Because those are the only remaining claims, this adversary proceeding is dismissed.

SIGNED **March 7, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE